**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Pablo Elias Beltran Lemus,<br><br>Petitioner,<br><br>-v-<br><br>Raul Maldonado, Jr., *Warden, Metropolitan Detention Center*, Ken Genalo, *New York Director, Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement*, David Venturella, *Director, U.S. Immigration and Customs Enforcement*, Markwayne Mullin, *Secretary of Homeland Security*, Todd Blanche, *Attorney General of the United States*,<br><br>Respondents. | 2:26-cv-06439<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On October 7, 2026, Pablo Elias Beltran-Lemus filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1.) The Petition alleges that ICE detained Mr. Beltran-Lemus without an individualized custody determination in violation of the Immigration and Nationality Act and the Fifth Amendment to the U.S. Constitution. (*Id.* ¶ 81.) As relief, the Petition seeks the issuance of a writ of habeas corpus that orders Respondents to immediately release Mr. Beltran-Lemus from ICE custody. (*Id.* ¶ 82.)

Respondents are the following federal government officials named in their official capacities: (1) Raul Maldonado, Jr., Warden of the Metropolitan Detention Center; (2) Ken Genalo, Director of the New York Field Office of ICE Enforcement and Removal Operations;

(3) David Venturella, Director of ICE; (4) Markwayne Mullin, Secretary of Homeland Security; and (5) Todd Blanche, Attorney General of the United States. In their response to the Petition, Respondents argue that venue lies in the Western District of Louisiana, rather than this Court. (Response to Petition for Writ of Habeas Corpus ("Response"), ECF No. 6 at 1–3.) Respondents further argue that this action is jurisdictionally barred by 8 U.S.C. §§ 1252(a)(5), (b)(9), and/or (g) as an indirect challenge to a final order of removal that was issued against Mr. Beltran-Lemus. (Response at 4–6.) Finally, Respondents contend that Mr. Beltran-Lemus has abused the writ of habeas corpus and that, in any event, he is now subject to mandatory detention under 8 U.S.C. § 1231 because his removal order has become final. (Response at 6–9.)

The Court heard argument from the parties at a telephonic conference on October 9, 2026, as well as at an in-person conference on October 13, 2026. (Min. Entry October 9, 2026; Min. Entry October 13, 2026.) Following the October 9, 2026 teleconference, Respondents withdrew their challenge to venue, but maintain that Mr. Beltran-Lemus has abused the writ of habeas corpus and that this Court lacks jurisdiction. (*See* ECF No. 9 at 1.)

The Court now rules on the Petition. Respondents' arguments that the Court lacks jurisdiction pursuant to 8 U.S.C. §§ 1252(a)(5), (b)(9), or (g) fail because the substance of the Petition is a challenge to the manner in which ICE detained Mr. Beltran-Lemus and the integrity of the custody determination that it eventually afforded him, not to any removal order issued against him. However, because the Petition is duplicative of another petition for a writ of habeas corpus that Mr. Beltran-Lemus previously filed in the District of New Jersey, which that district court granted, the Court finds that the Petition constitutes an abuse of the writ. Therefore, for the reasons explained below, the Petition is DISMISSED.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Mr. Beltran-Lemus's Entry Into the United States

Mr. Beltran-Lemus is a forty-year-old citizen of El Salvador. (Petition ¶ 9.) He entered the United States without inspection "around May 2005" and was not arrested at the time. (*Id.*) Mr. Beltran-Lemus is married and has three U.S. citizen children. (ECF No. 1-2 at 2, 4; Petition ¶ 1.) Until the events that led him to file the Petition, Mr. Beltran-Lemus and his family lived in East Meadow, New York. (Petition ¶ 1.) In December of 2015, Mr. Beltran-Lemus filed an asylum application with United States Citizenship and Immigration Services ("USCIS"). (Keane Decl., ECF No. 6-1 ¶ 6.) On August 30, 2018, USCIS referred Mr. Beltran-Lemus's application to the Executive Office of Immigration Review. (*Id.* ¶ 7.) On September 10, 2018, Mr. Beltran-Lemus was served with a Notice to Appear ("NTA") initiating removal proceedings and ordering him to appear before an immigration judge on October 26, 2018. (*Id.* ¶ 8.) Following multiple adjournments and some time in a trial queue, the Immigration Court issued a notice of intent to remove Mr. Beltran-Lemus's case from its calendar. (*Id.* ¶¶ 10, 11.)

### II. Mr. Beltran-Lemus's Arrest and Detention

Mr. Beltran-Lemus was arrested on April 23, 2026, by the Nassau County Police Department for criminal possession of a forged instrument in the third degree in violation of New York Penal Law § 170.20. (ECF No. 1-2 at 3; Keane Decl. ¶ 13.) He was held at the Third Precinct, at 214 Hillside Ave., Williston Park, NY 11596. (ECF No. 1-2 at 3.) At approximately 8:09 p.m. that night, the Nassau County Police Department contacted ICE and informed them that Mr. Beltran-Lemus had been arrested. (Keane Decl. ¶ 14.) Acting Supervisory Detention and Deportation Officer John Keane carried out a records check on Mr. Beltran-Lemus, determined that he was present in the United States without authorization, and issued a Form I-200 Warrant

for Arrest of Alien. (*Id.* ¶¶ 15, 16.) Between 10:00 p.m. and 11:00 p.m. that night, Keane travelled to the Third Precinct and interviewed Mr. Beltran-Lemus. (*Id.* ¶ 17.) Keane then took custody of Mr. Beltran-Lemus and transported him to 100 Carman Ave., East Meadow, NY, where he was processed by Deportation Officer George Meyer. (*Id.* ¶¶ 17, 18.)

On April 24, 2026, ICE transported Mr. Beltran-Lemus to the Delaney Hall Detention Facility in New Jersey. (*Id.* ¶ 20.) On April 29, 2026, at approximately 10:00 a.m., ICE transferred Mr. Beltran-Lemus from the Delaney Hall Detention Facility in New Jersey to the Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he arrived at approximately 1:30 p.m. (*Id.* ¶ 21.)

### III. Proceedings in the District of New Jersey.

On April 29, 2026, the day that he was transferred to the MDC, Mr. Beltran-Lemus, through counsel, filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey, which was assigned to Judge Esther Salas (the "First Petition"). (ECF No. 6-6, 7-1 at 3.) That same day, Judge Salas issued an order finding that Mr. Beltran-Lemus was detained pursuant to 8 U.S.C. § 1226(a) and had unlawfully been held without a bond hearing in violation of both the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (ECF No. 7-1 at 4.) Judge Salas granted the First Petition and ordered that the respondents either release Mr. Beltran-Lemus or file an expedited response. (*Id.*) The respondents filed an expedited response on May 1, 2026. (*Id.*)

On June 9, 2026, Judge Salas issued an order requiring the respondents to provide Mr. Beltran-Lemus with an individualized bond hearing before an immigration judge. (*Id.* at 4–5.) On June 12, 2026, the respondents filed a letter informing Judge Salas that they had already

carried out such a hearing on May 22, 2026, and attached the bond decision. (Response at 4, ECF No. 7-1 at 5; Keane Decl. ¶ 27.)

While the New Jersey case was pending, Mr. Beltran-Lemus was ordered removed by an immigration judge on July 17, 2026. (*See* ECF No. 6-11.) Mr. Beltran-Lemus did not appeal that removal order. (Keane Decl. ¶ 28.)

On September 27, 2026, current counsel for Mr. Beltran-Lemus filed an appearance in the New Jersey case. (ECF No. 7-1 at 5.) On September 30, 2026, Mr. Beltran-Lemus and respondents in the New Jersey case stipulated to the dismissal of the action, and Judge Salas dismissed the case on October 1, 2026. (*Id.*)

## IV. Transfer and Proceedings Before This Court

On October 6, 2026, Mr. Beltran-Lemus was booked out of the MDC at approximately 3:48 p.m. and was placed aboard a flight that departed Newark, New Jersey at 6:40 p.m. and landed in Alexandria, Louisiana at 8:52 p.m. (Keane Decl. ¶ 30.) At 7:10 p.m. that day, more than three hours after Mr. Beltran-Lemus had been booked out of the MDC and thirty minutes after his flight had departed New Jersey, counsel for Mr. Beltran-Lemus called the MDC and was informed that Mr. Beltran-Lemus was still at the facility and could be visited there the next morning. (ECF No. 8 at 1–2.)

On October 7, 2026, at 8:02 a.m., Mr. Beltran-Lemus, through counsel, filed the Petition before this Court (the "Second Petition"). (*See* Petition.) At 8:25 a.m. that day, counsel for Mr. Beltran Lemus emailed three individuals at the U.S. Attorney's Office for the Eastern District of New York to ask whether ICE continued to detain Mr. Beltran-Lemus in the MDC; that email went unanswered for at least three days. (Hrg. Tr. Oct. 9, 2026, ECF No. 10 at 12:13–13:19.)

At 10:08 a.m., this Court issued an Order to Show Cause that scheduled a hearing on October 13, 2026, stayed Mr. Beltran-Lemus's removal from the United States, and enjoined his transfer outside of the Eastern and Southern Districts of New York or the District of New Jersey. (ECF No. 4.) The Court held a telephonic conference on October 9, 2026, at which it heard argument from the parties on all issues. (Min. Entry October 9, 2026.) On October 13, 2026, the parties appeared before the Court for a show cause hearing, at which Mr. Beltran-Lemus was present. (Min. Entry October 13, 2026.)

## DISCUSSION

### I. The Court has jurisdiction over this action.

Respondents argue that "[t]his action is, in substance, a challenge to [Mr. Beltran-Lemus's] removal order, and, therefore, is barred" under one, or several, statutory sections that strip this Court of jurisdiction over the instant case. (Response at 4–6.) First, Respondents rely upon 8 U.S.C. § 1252(a)(5), which provides that "[n]otwithstanding . . . section 2241 of title 28 . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means of judicial review of an order of removal . . . ." Second, Respondents rely upon 8 U.S.C. § 1252(b)(9), which provides that "[j]udicial review of all questions of law and fact" arising from removal proceedings "shall be available only in judicial review of a final order [of removal]." Third, Respondents rely upon 8 U.S.C. § 1252(g), which provides that "notwithstanding any other provision of law . . . including section 2241 of title 28 . . . no court shall have jurisdiction to hear any case or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ."

Respondents' position is belied by the Petition, which plainly challenges Mr. Beltran-Lemus's detention "without the *required custody process*" rather than his removal order. (Petition at 1 (emphasis added).) The Petition acknowledges the jurisdictional bars invoked by Respondents and makes clear that it seeks "review of whether the Government had legal authority to detain [Mr. Beltran-Lemus] or followed the required procedures." (Petition at 4.) The Petition specifically alleges that it "challenges the legal limits on detention, not simply an unfavorable exercise of discretion" and disavows any claim that it is an "appeal of the removal order." (*Id.*) In substance, the Petition challenges the manner in which ICE detained Mr. Beltran-Lemus and the integrity of the process that ICE afforded him in making its eventual custody determination. In fact, at the time that the Petition was filed, counsel for Mr. Beltran-Lemus was not even certain whether the removal order issued against Mr. Beltran-Lemus was final. (Petition ¶ 47.) As such, none of the statutes on which Defendants' rely, 8 U.S.C. §§ 1252(a)(5), (b)(9), nor (g), bar the Court's exercise of jurisdiction to adjudicate the Petition.

Respondents' reliance on the Second Circuit's opinion in *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011), is misplaced. (*See* Response at 5.) In *Delgado*, the petitioner sought a writ of mandamus to force adjudication of an I-212 application, which would have permitted her to obtain adjustment of status, thus obviating her removal order. *Id.* at 55. The Second Circuit concluded that the petitioner was "indirectly challenging her reinstated order of removal" and so read Section 1252(a)(5) to bar her suit. *Id. Delgado* bears little relationship to the present case. The Petition's challenge to the process afforded to Mr. Beltran-Lemus does not bear on the integrity or finality of his removal order. Moreover, the temporary stay of removal applied to Mr. Beltran-Lemus is authorized by the All Writs Act solely in order to protect this Court's jurisdiction over the Petition. *See* 28 U.S.C. § 1651.

The three decisions by district courts in this Circuit invoked by Respondents are equally dissimilar to the present case. In *Villatoro v Shanahan*, No. 26-cv-1210, 2026 WL 948297 (E.D.N.Y. Apr. 7, 2027), the district court found that the relief sought "would frustrate the government's ability to enforce the removal order" and was thus barred by Sections 1252(a)(5) and (b)(9). *Id.* at *3. But the petitioner in that case sought immediate release as well as "an injunction preventing the government from re-detaining him . . . ." *Id.* (internal quotation marks omitted and alteration adopted). Here, Mr. Beltran-Lemus does not seek an injunction preventing Respondents from effectuating a removal order.

Respondents also point to *Sauceda Henriquez v. Noem*, No. 25-cv-7023, 2026 WL 11665, at *4 (E.D.N.Y. Jan. 15, 2026), and *Villatoro v. Noem*, No. 25-cv-5306, 2025 WL 2880140, at *4 (E.D.N.Y. Oct. 9, 2025). (Response at 5–6.) However, in both of those cases, the petitioners were subject to final orders of removal and were subsequently detained in order to effectuate those removal orders. *Id.* Therefore, the petitioners in those cases were directly challenging the validity of their removal orders. Here, Mr. Beltran-Lemus seeks to challenge his detention and the custody determination provided to him pursuant to 8 U.S.C. § 1226(a), which took place well before he was subject to a final removal order and is independent of that order's validity. (*See generally* Petition.) As such, none of the authorities cited by Respondents persuade this Court that it lacks jurisdiction to adjudicate the claims in the Petition.

**II. Mr. Beltran-Lemus has Abused the Writ of Habeas Corpus.**

The "abuse of the writ" doctrine refers to a "complex and evolving body of equitable principles . . . ." *McCleskey v. Zant*, 499 U.S. 467, 489 (1991). The doctrine provides that "a court need not entertain a petition that abuses the habeas process." *Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004). The Second Circuit has explained that "[o]ne frequently recognized

indicator of abusiveness is whether the petitioner could have asserted his present claims in his prior petition." *Id.* "Depending on the circumstances, [both] the repetition of a previously asserted claim . . . [and] raising new claims that could have been pursued in a prior petition" may constitute abuse of the writ. *Id.*

Respondents argue that Mr. Beltran-Lemus has abused the writ of habeas corpus because, prior to the instant action, he filed the First Petition before the District of New Jersey. (Response at 6; *see Beltran-Lemus v. Blanche*, No. 26-cv-4766 (D.N.J.).) They argue that The First Petition was duplicative of the one before this Court and that Mr. Beltran-Lemus could, and should, have brought any claims set forth in the Petition before this Court in the prior action. (Response at 6.)

On reply, Mr. Beltran-Lemus concedes that the District of New Jersey "did adjudicate a § 1226(a) remedy" when it ordered the provision of a bond hearing to him. (Reply, ECF No. 8 at 4.) The First Petition, like the Second Petition before this Court, brought claims for violations of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act based on ICE's detention of Mr. Beltran-Lemus without a proper custody determination as required by 8 U.S.C. § 1226(a). (*See* ECF No. 9-2.) Judge Salas found that Mr. Beltran-Lemus was detained pursuant to 8 U.S.C. § 1226(a) and, to remedy the procedural defects in his detention, ordered the respondents to provide him with an individualized bond hearing before an immigration iudge. (ECF No. 9-1 at 3–4.)

Mr. Beltran-Lemus argues, however, that Respondents have filed new documents in opposing the Petition in this action, including a declaration and several forms related to the arrest and processing of Mr. Beltran-Lemus, which provide new facts unavailable to him at the time the First Petition was filed. (*See* ECF No. 11 at 5–8.) Specifically, he points to a Form I-286 Notice of Custody Determination, an ICE *Velasaca* worksheet, and a declaration from John Keane,

Acting Supervisory Detention and Deportation Officer at ICE. (ECF No. 11 at 5.) However, Mr. Beltran-Lemus concedes that the Form I-286 was available to him when he brought the First Petition because it was present in his immigration file and he acknowledged receipt of it on May 14, 2026. (*Id.*) Thus, the new facts are actually limited to the *Velasaca* worksheet and the "fuller chronology" provided by the Keane Declaration. (*Id.* at 6.) Therefore, Mr. Beltran-Lemus's argument as to the availability of new facts boils down to the position that, during the pendency of the First Petition, he was not aware of a discrepancy in dates: the Form I-286 and the *Velasaca* form are dated May 12, 2026, while the Keane Declaration states that the interview and *Velasaca* form were completed on May 14, 2026. (*See id.* at 4.) Mr. Beltran-Lemus argues that this discrepancy calls into question the integrity of the custody determination that he received and suggests that it was predetermined. (ECF No. 11 at 6.)

This new factual discrepancy identified by Mr. Beltran-Lemus goes to the merits of his claim that ICE failed to follow the procedures required by 8 U.S.C. § 1226(a) and therefore violated his due process rights. However, that procedural due process claim is precisely what Judge Salas adjudicated in the New Jersey case. (*See* ECF No. 9-1 at 3–4.) It is possible that, had Mr. Beltran-Lemus been previously denied a writ of habeas corpus, such new facts could justify a second petition. *See e.g., Bapary v. Soto*, No. 26-cv-354, 2026 WL 1153664, at *1 n.1 (D.N.J. Apr. 29, 2026) (granting a second petition after denying a first one based on new facts not made available to the district court when it issued its initial denial). However, Mr. Beltran-Lemus *prevailed* on the procedural due process claim in his initial petition. (ECF No. 11 at 3–4.) Because the new facts that Mr. Beltran-Lemus raises in support of the procedural due process claim in the Second Petition support the remedy already granted by Judge Salas, he fails to contradict Respondents' assertion that the Second Petition is duplicative.

Nor does the Second Petition raise a new claim for relief that was not adjudicated in the New Jersey case. *See* Discussion Part I *supra*. Mr. Beltran-Lemus argues, in a letter to the Court, that the prior case could not have adjudicated "the October 6 transfer, the misinformation given to present counsel, or the loss of access to accurate custody information." (ECF No. 8 at 4.) This argument appears to center on ICE's transfer of Mr. Beltran-Lemus from the MDC in Brooklyn to a Louisiana detention facility and Respondents' initial challenge to this Court as the proper venue for the Petition. However, Respondents have since conceded venue. (ECF No. 9 at 1.) And despite Mr. Beltran-Lemus's characterization of these issues as "constitutional injur[ies]," *id.*, he fails to make any coherent argument for what constitutional claim is supported by these facts such that the Second Petition is not duplicative of the First Petition. Nor has Mr. Beltran-Lemus made any request to amend the Petition to include claims based on any of the newly available information. As such, there is no claim before the Court that was not previously adjudicated and remedied by Judge Salas. The Court therefore finds that the Petition constitutes an abuse of the writ.

**CONCLUSION**

For the reasons set forth above, the Petition is DISMISSED as an abuse of the writ.

Dated: Central Islip, New York
November 2, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge